Good morning, Your Honors. May it please the Court. Stephen Sherlag on behalf of Plaintiff James Ray Davis. Your Honor, this case is a simple one in many ways and has a lot of complicated facts. I would like to reserve three minutes in rebuttal if I might. Just keep an eye on the clock. I'll try and help you. Thank you, Your Honor. I'd like to point out, first of all, there's a relatively simple State statute which is at the heart of this case. And there are two very clear judgments by a Washington County Circuit Court judge and by a district court judge here in the District of Oregon which attempted to give fully concurrent prison sentences to Mr. Davis with regard to very closely related factual incident. And specifically, both judgments of the Circuit Court and of the District Court relate to each other. And both indicate that Mr. Davis should have received concurrent sentences on the charges. And so what's at issue here is the construction of the State statute that deals with pre-sentence incarceration credits. And what ended up occurring for Mr. Davis is that he served his sentence in the Federal system first. And because of the operation of Oregon State law, he was not entitled to any type of earned time reduction. And when he was then sent from the Federal penitentiary to the State penitentiary and denied all of the pre-sentence adjudication credits, he dutifully tried to contact all of the prison term analysts that were involved in his case, and there were many, as you can see from the number of cases. I'm sure, like, you know, I think all of us are familiar with the background of this case. What would be helpful to me, if you would talk about, you know, there's several, I'll call them procedural barriers to your claim, right, such as the settlement agreement, such as the settlement agreement, and heck, versus something, it would be more helpful if you addressed why you believe those bars don't apply to you. Absolutely, Your Honor. Well, first of all, I think the first procedural bar, which would be the heck issue, I think to which the Court refers, simply doesn't apply in this case because Mr. Davis, at the time that he filed his 1983 lawsuit, had no manner to utilize habeas to in any fashion. Wasn't that of his own doing? Well, Your Honor, presumably it's of his own doing because he did settle his habeas case, but I think it would be against public policy to in any fashion require an incarcerated person to remain in custody just to vindicate a monetary judgment. Well, how do you get around Guerrero v. Gates? I'm sorry, Your Honor, which case? How do you get around Guerrero v. Gates? You know, our case that holds that, in effect, if it's self-imposed, you're out of court. Well, I think the nonet case is directly on point, Your Honor, and that gives Mr. Davis the ability to pursue habeas and, once successful to habeas, pursue monetary damages. But in the net, it wasn't through any act of his own. In Guerrero, the time frame had elapsed and he had just waited to bring his action. They said when it's by his own act, then he – the heck bar remains. That exception doesn't apply. And here, he clearly got a beneficial settlement. He terminated his habeas proceeding. He's out, and it seemed like Guerrero would control. Well, Mr. Davis is also required in many ways to mitigate his damages. And if he's allowed to get out of custody, he should be required to do that, in fact. And I think the State of Oregon would be required to do that. And the notion that he should be required to remain in custody and continue to harm himself to then pursue monetary damages, it – I don't – I think that's clearly against policy and doesn't make sense in this situation. But wouldn't the solution to that problem have been to redraft the language of the settlement agreement? Well, I don't think so. To make clear that he was preserving a 1983 claim for damages? Well, there's really nothing in the settlement agreement in any way reflects anything about damages. It just – Well, it says he's giving up his – I forget the language. All of the dispute. Yeah, all of the – he's resolving his dispute with the State of Oregon. And then he turns around and sues them for 1983 damages, which doesn't sound like he's resolved his dispute with the State of Oregon. Well, he's – it says he's resolved the dispute between the parties regarding the sentence calculation in Davis v. Houghton. And – But isn't that the basis for his 1983 action, the challenge to the sentence computation? Well, first of all, the defendant in – Well, let's answer the question yes or no. Isn't that the underlying – I think it does not resolve that, Your Honor, now. No, that's not the question. The question is, isn't that the underlying basis for his claim? That the State erroneously calculated his sentencing credit. What's underlying in Davis v. Houghton is whether or not he should be released from custody immediately. It doesn't resolve whether or not he was previously held illegally. And up until his release date, he was held illegally under Oregon law. Because they didn't – because they didn't accurately computate his credit for the pre-sentence time. It wasn't just that computation.  And then there's the issue of the State's refusal to give him credit for as many days as he thought he was entitled to on his federal and state sentences. And that's a time computation issue. And that's the basis for his 1983 action, isn't it? In essence, Your Honor, yes it is. But in Davis v. Houghton, what he's not seeking is he can't get relief for that period prior to his release. And he's not seeking relief for that period prior to his release on May 1st of 2006. In Davis v. Houghton, it's just a matter of then being released from custody. There's no way that he can get any monetary damages in Davis v. Houghton in the habeas matter. And it resolves it in saying that, you know, there won't be any further litigation. It's saying that the settlement agreement, they agree that he will be released then on May 1st of 2006. So is your theory then that when he said he was resolving all the dispute about the sentencing calculation, he was resolving the question about whether he should be released, but he was reserving at least in his mind or any claims for damages based on the past over-incarceration?  Absolutely, Your Honor. In the stipulated judgment, it refers to nothing about damages, nothing about civil liability, nothing about 1983 suits. It resolves nothing about whether or not he was held properly up until that day, the May 1st date. If we disagree with you on that point, are we through then? The settlement released his claims, assuming that that's what we would decide. There's nothing left, or is there something left? No, we're not finished, Your Honor. And I would respectfully refer the Court to the district court's ruling as to whether or not he entered into the settlement agreement, as the opposing party calls it, the stipulated judgment, voluntarily. And there are sufficient facts in the record to suggest that, you know, the district court, Judge Mossman, thought there was enough to send that to the jury. Can I ask you about that? Because I was a little puzzled by the district court's ruling. The issues that you point to as making his entry into the settlement nonvoluntary were like his own feelings of stress. But he was represented by counsel at the time, and I didn't see any case or you didn't cite a case that I saw that would indicate that an entry into a release was nonvoluntary, not knowing and intelligent, on that basis of internal feelings of anxiety or stress. So can you help me out on that point? Well, I guess I didn't say the authority on that. I think that that is certainly dealt with in the Rummery case, and Justice O'Connor talks about that in terms of whether or not someone was – whether or not a release-dismissal agreement is enforceable as public policy. That was a little different, though, right, because in Rummery and that line of cases, the question was if you don't give us a release, we'll prosecute you. Right. And in your case, he's saying if you don't let me out, I will prosecute you. So it doesn't seem like those are exactly on point. Well, I think that Rummery's also – What was the threat that the court had, I mean, the threat that the sentencing authority had? Well, the threat that he had would be continued improper incarceration. And as we know here from the district court's ruling, if the court here agrees with it, the Sentence Computation Unit was calculating his release date incorrectly. They were applying 137,370, sub 4, when they should have been applying 2A. And so the threat was longer-term, further illegal incarceration. He had personal life stressors, which involved – he had issues with his child he was trying to obtain custody of, who was in an abusive situation, which he ultimately had – has done. He had a tremendous amount of stress, which you can see from, in the record, at least the kites that he would send to the prison term analysts asking for release. He had a job opportunity, which is – So is your position that every time an inmate who is in custody, which is the only way you can file a habeas action, settles a habeas claim, that it's involuntary by virtue of the fact that if he doesn't settle, he otherwise gets held longer than he thinks he should be held? I'm not suggesting there's a per se rule as to that, Your Honor. But I think here in this given case, the district court was correct in saying that there were sufficient facts that this could go to the jury based on the record that was provided. So I don't think it's a per se rule, but I think that these types of – unlike Rummery, which is the release-dismissal, in this situation, if you're held illegally, there really is no consideration that's actually given to Mr. Davidson. That's a basis for every Federal habeas claim. I'm being held in contravention of the laws and constitution of the United States. If they simply wanted to have a civil release of liability, that's what should have been drafted by the defendant. Houghton, you know, here the defendants are suggesting they're in the same shoes. There are very easy ways to see releases. I don't need to point to the Court. I'm sure the Court's seen them in many ways. And you can release third parties, assigns, the State of Oregon and so on and so forth. But this agreement itself, you know, Oregon uses the objective view, and this is not a release under objective reading, under the objective rules of contrast. That gets me back to the question that you and I were wrestling with a few minutes ago. The language says that the settlement resolves the dispute between the parties regarding the sentence calculation. And if we determine that the basis of his 1983 action is an improper sentence calculation, notwithstanding your arguments about the fact that it doesn't include the standard release language that good civil lawyers write whenever they write a settlement agreement and a global release, why doesn't that speak directly to the issue that underlies his subsequent claim? Because the district court in Davis v. Houghton didn't have the ability to rule that the earlier period of incarceration was illegal. All the Court could actually do in habeas matter is order that Mr. Davis be relieved. It didn't have any jurisdiction or ability to say that the period that he was seeking as opposed to the basis for his claim. The remedy he wanted in the Federal action, I assume, before Judge Hagerty, was I want you to terminate my post-prison supervised release immediately because I was held too long. Isn't that the remedy that he was seeking in Davis v. Houghton? The remedy he was seeking in Davis v. Houghton was release from custody. He wanted to get out of state prison. And he wanted to be discharged from any continuing term of supervised release from the Federal conviction. Isn't that right? He did end up serving a further period of supervised release. Counsel, you're not answering my question. Isn't that the remedy that he was seeking? He did seek further remedy with regard to supervised release, but ultimately he gave up that in the stipulated agreement and judgment that was entered before Judge Hagerty. And so you wanted to save 3 minutes and you're at 2.18. Okay. Thank you. Good morning. May it please the Court, Counsel. Sam Kubernick for Defendant, State of Oregon, and the rest of the State defendants. I did just want to very quickly acknowledge a small factual error in the State's Respondent's, excuse me, Appellee's brief. As Counsel pointed out on one page of the brief, the stipulation is quoted incorrectly. And I apologize for that.  Well, the language that I was looking at was right out of the settlement agreement. Yes. And that's the language we should be focusing on? Yes, Your Honor, absolutely. All right. Which I guess would bring me to the first point regarding the settlement agreement. As Your Honor pointed out, the sentencing calculation, which is the core of this dispute, which was the core of the habeas dispute, that issue was explicitly resolved through the habeas settlement. Counsel is correct that it wasn't the same defendants. However, the defendant in that case, as the defendants in the case before the Court now, the Section 1983, were all State of Oregon employees. Again, it was the same issue. If the State may have been the initial scrivener of that stipulated agreement, in the habeas case, certainly plaintiff through counsel was free to explicitly reserve the right to bring a Section 1983. That was not done. I assume Houghton was his custodian at the time that the habeas claim was filed? Yes, that's the superintendent of the institution where he was incarcerated. And it was people under the superintendent who actually do the computation, right? Yes, that's correct. So it was agents? Correct. Prison term analysts, folks from what's called the Office of Information and Sentence Calculation, OISC. So why didn't the assistant U.S. attorney who was defending the habeas action make it clear in the settlement agreement that the release released all agents, spouses, people who just happened to be walking by that day, you know, the usual language? Sure. You know, we don't have information in this record about why that broader release wasn't done. However, I think as Judge Mossman correctly found in one of the opinions that this was very clear, this was the same dispute at core, that it wouldn't be workable to say, well, okay, for habeas it resolves the sentencing calculation issue, but it could come up again in another suit. I think the next issue, if this Court were to disagree about the settlement, either its scope or voluntariness, would be Heck v. Humphreys. I think it's clear that this type of suit is barred by Heck v. Humphreys. Even when you're only seeking monetary damages for being held too long? You know that Wilkinson, which was not cited in the States brief, however, it was cited in the reply brief and in one of, I believe, one of the district court opinions, and that's a U.S. Supreme Court case, that makes it clear that regardless of the remedy that the plaintiff may be seeking and whether or not they're challenging the confinement or the duration of that confinement, Heck would still apply, which would mean that plaintiff would need a favorable termination. I understand that it's not precisely a challenge to the sentence. It's pretrial credits. However, in this, were this Court to grant relief, that would, I believe, necessarily imply that a period of Mr. Davis's confinement was invalid, those nine months that he believes he was unlawfully there. What's your response to our case in Nonet v. Malt? Sure. I think this is factually distinguishable from Nonet. Mr. Davis, I would point out for one thing, you know, Nonet had to do with a plaintiff who, simply because it was a very short sentence, I believe this Court concluded that as a matter of law, it was impossible for Mr. Nonet to have gotten a favorable termination. I don't think it would have been impossible in this case. Mr. Davis first started challenging what he believed to be the unlawful confinement in, I believe it was April 2005. I believe by June 2005, he learned from, he'd gotten a few responses from ODOC officials. Ultimately, one of them told him that, you know, this is our interpretation. We can't change that. If you disagree, you can take it up with the courts, which he did eventually do, but that wasn't until December 2005 when he filed the habeas petition. So we're talking several months, about five or six months. And then when the stipulated agreement was reached in the end of April 2006, that got him out of custody about five months earlier than defendants believed he should have been released. So I don't think in this case we can say that it's impossible that he could have gotten relief. He made choices to, for one thing, for some delay in filing the habeas, and then in accepting the stipulation which allowed him out of custody several months earlier than he otherwise would have been released. But in the release doesn't contain any of the usual language that, you know, neither party admits to liability. It's just silent on that issue. That's correct. It doesn't, again, I would refer to Judge Mossman's opinion that it's very clear that at core this is the same dispute. Well, there's no question that it's the same dispute, but the question is in the absence of that language, is there an ambiguity in the settlement agreement that we have to Although I guess here it's against the United States, and since the state wasn't even a party. No, the state, it was, it was the state as well as the United States, and obviously plaintiff, both the state of Oregon and AUSA signed off on the stipulated settlement. Who was Lynn Larson? He is an attorney at Department of Justice. Oh, I see. He is, yeah. And Jonathan Howe, I believe, was the AUSA involved. So it was both. You know, it's possible, as I look at the language in the settlement agreement, it's really just a stipulation, I guess. But it says, this settlement resolves a dispute between the parties regarding the sentence calculation in Davis v. Houghton. You know, one way to read that is the only dispute that's being settled is the dispute in Davis v. Houghton, and that's further confirmed by the fact that further, a little further down, Davis agrees to dismiss that same case, 05-1830, right? So in other words, this seems, this could be read as nothing more than agreement to dismiss Davis v. Houghton. Can it? I don't think it should be read that narrowly, but I understand there are There are some difficult issues with the State's Defendant's Settlement Agreement argument. I don't think we need to win that issue to win this case. As pointed out, Heck v. Humphreys, we believe, would bar the current suit. And then the Well, except that, speaking of Heck v. Humphreys, Haygood, I think, unquestionably recognizes that, at least in certain circumstances, a person who does not have a habeas remedy can still pursue a 1980s reaction, right? You mean known that, is that your case or the Haygood from Right. I mean, Haygood says that, right? Well, I think you're Haygood says there's an exception to the Heck v. Humphrey rule, right? I understood that from So the question is whether this case fits within that exception, isn't it? Yes. And you can make an argument, I think, just based upon Ninth Circuit cases. You can make an argument both ways. I think this is You can with most issues in the Ninth Circuit. I think this one is closer to Guerrero and the other cases where plaintiffs made some choices to accept the early release. And I think the final issue And then there's what the cases like, you know, what was it, Nonet, right? Yes. Nonet is this Court's opinion. On the other side. Correct. I think even moving beyond the settlement agreement and Heck v. Humphrey, the final issue was whether there was any constitutional violation, and if so, even if so, whether these defendants are entitled to qualified immunity. In this case, as the district court ultimately found, there was no 8th or 14th Amendment violation. These and even if there was, the law under these particular circumstances was not clearly established. These defendants were relying on policy which had been established. They were relying on advice from their attorneys. And there was also some Oregon appellate law, State v. Curry, that's cited in, I think it's cited in all the briefs, but certainly in the respondent's briefs, suggesting that, you know, it was not unlawful to, you know, we have to keep in mind that Mr. Davis did get pretrial incarceration against his federal sentence, and there's, he did not against a state sentence, but there's case law and other authority at least suggesting that that was unlawful. And that was reasonable. Ginsburg. Does the State still adhere to the, that interpretation that if the pre-incarceration time is applied to a federal sentence, then it can't be applied to the state sentence? Is that right? I believe at this point, yes. I know that, you know, in this case certainly there's one, one of the district court opinions, Judge Mossman, excuse me, did specifically find that that interpretation was erroneous. I think there's some discussions about, you know, it's not clear. The ramifications from this case could impact how ODOC looks at that in the future, but I believe for now, yes, they're still adhering to that policy. And there has been a court ruled on it other than the discussion in Curry, and I think there's Chambers v. Moss is another one. Has a state court ruled on that? I don't believe so. There has been an analog, as footnoted in the State's brief, an analog State case involving Mr. Davis and some of these claims. I think that was ultimately resolved in the State's favor through a statute of limitations issue, so there hasn't been an explicit ruling regarding the State's interpretation of ORS 137-370. What impact does the Supreme Court's decision in Farmer have on our decision in Hagin? Sure, well, at the district court level, that certainly made the difference for Judge Mossman, that the sort of standard that needed to be proven to create a genuine issue of material fact regarding an Eighth Amendment violation was deliberate indifference. Not only that a reasonable prison official, these prison officials needed to be aware of a risk that their actions were unlawful, but also willfully ignore that risk. So it was a higher bar than had been set out by this Court in Hagin prior, and it was that Farmer in large part that convinced ultimately Judge Mossman that there had been no Eighth or Fourteenth Amendment violation as applied to Mr. Davis, Mr. Davis in this case. And obviously we believe that was a correct ruling. I think further, even an additional case from this Court, which was submitted through a letter of additional authorities. Alston v. Reed gives some further support for the issue of even if a prison official's interpretation of a statute is found to be ultimately incorrect, or their calculation of a sentence, that that may not necessarily, they still could be acting reasonably in those circumstances and still be immune from Section 1983 liability. Unless the Court has further questions, I'll rely on the brief for remaining arguments. I think nothing further. Mr. Kubernick, thank you. Thank you, Your Honors. Mr. Sherlagge, I think you have a couple of minutes left. Thank you, Your Honors. The Curry case is, I think, not instructive to this Court. The district court certainly didn't find it persuasive at all, Your Honor, because in that case the courts applied the wrong subsection of 137.370. They applied sub 4 as opposed to sub 2a. In here, I think that even looking at Curry and the statute and what the prison term analysts actually knew and did in this case, I think, is powerful. I mean, these are folks that had a difficult time explaining what the word any was and how it applied to the statute. These are folks that had a difficult time understanding how crimes and conduct mean two different things. And these are not obtuse or obscure words. And we spend an awful lot of time hearing sentencing appeals on what constitutes relevant conduct, counsel. I mean, I would think that's a fairly straightforward term, but not according to the bar. Well, but the statute here is even much more clear, and relevant conduct isn't tied. I mean, Mr. Davis, remember, is charged with stealing firearms in a burglary and possessing the firearm. And the idea that those aren't directly related, that's not conduct. What they were doing, what these analysts were doing was applying a same elements test, essentially a jeopardy type analysis. The word conduct means nothing whatsoever. And that's kind of a far reach. And these are analysts that say that they know that when there's ambiguities, they should go talk to a supervisor. Nobody did that here. Mr. Davis in his kites asked the analysts, what are you using, what kind of hearing are you doing to determine that these two crimes weren't directly related and they were just basically ignoring Mr. Davis? Well, they had quite a lengthy exchange of correspondence, and they got an opinion from the State Attorney General's office, so they did more than in some of the other cases that you're relying on. The opinion from the AG's office, and I'm correct, Your Honor, occurred in the drafting of the policy that Ms. Rainey herself relied upon. And I also want to distinguish Ms. Rainey because she's the policy drafter. She's held to a different standard. She's not eligible for qualified immunity, and she's not eligible for defensive counsel either. So she stands out separate from the other defendants in any way. She's the policy drafter. She's the one that's going to do it. But we still have to conclude there's a constitutional violation, and if we conclude that you don't meet that prong, then we don't need to worry about qualified immunity. Of course, Your Honor. And I think that the Farmer case and the Alston case aren't helpful because they really point out to the fact that in this situation, there was an awareness of the problem, there was an awareness of the statutory problem here. And I don't think they really help the defense on it at all. Thank you. Thank you both very much. The case just argued is submitted.
judges: Tashima, Tallman, Ikuta